489 Carl Daniel v. Police Pension Fund of City of Charleston. For the appellant, we have Charles Atwell, Jr. And for the appellee, Christopher Wetzel. Please proceed. Good morning. My name is Charles Atwell on behalf of the board. I'll explain it in this particular case. Good morning to all of you, counsel. This case presents itself on a manifest weight argument before the clerk only, and I think both parties concede that fact in this particular case. I'm not going to belabor the issue. I think everything is set forth in the briefs in this particular case. But I would touch on a few matters that I feel are important in this particular matter. And of course, if the court has any questions, please feel free to ask me those questions as we go along. The board takes no objection in this case that there's a disability. The board in fact granted a non-duty disability in this particular case to the applicant. The board takes no issue that the incidents complained of, there are three of them, which occurred, as alleged, constitute acts of duty, as that term has been defined and applied to Article III pension boards. Nor does the board take any issue with the fact that an aggravation of a pre-existing condition may in fact constitute a disability under the law as provided. But what the board does argue in this case is that none of the incidents in question either caused or contributed to the disability of the applicant in this particular case. First incident was August 10, 2004. Plaintiff had, at that time, a very long history of pre-existing back problems. In that case, the claims that the suspect bolted, hit him in the shoulder, and injured his back. There was no emergency medical room treatment. He filed a notice of injury the day after. And as I said, no treatment in this particular case. He did not fall. There were no witnesses. Second incident on May 3, 2005. Wrestling a large individual. State said he was injured in doing so. No report on that matter filed. No witnesses in that particular case had testified. No emergency medical room treatment. In fact, he never saw a doctor in that particular case until two weeks thereafter on the 16th when he saw Dr. McKenzie. So that injury is actually disputed by the police department? I'm sorry? That injury is actually disputed? We are, not that the incident occurred, that the activity occurred. We know that he was present. We know that there was an activity on that day. But what we are saying is that there was no injury sustained by him at that time. And that's the May 3, 2005 incident? I'm sorry? Is that the May 3, 2005 incident? Yes, that is. All right. Okay. Last incident was June 20, 2006 when he was investigating a dog barking incident. He stated that he slipped on loose sod, injured his back. He stated in his interrogatories that he fell. He stated in his testimony that he did not fall. No emergency medical room treatment in that particular case. Filed a notice of injury the day after. As I stated, there is a long history here of pre-existing back complaints. There is a conflict in the testimony of the applicant at the time of the hearing. Applicant testified that he primarily received chiropractic treatment prior to these incidents in question. The record is very clear that he received medical treatment by Dr. Welkner and I think Dr. Roots, R-U-T-Z, in 2002 and 2003. He also received treatment and examination at Sarah Bush Hospital. Applicant had testified at the time of hearing that no doctor before had told him prior to the incident that surgery might be an option to relieve his symptoms. That is not correct because the testimony or the medical evidence in the record is very clear by Dr. Welkner that in 2002 he in fact inquired whether surgery would relieve his discomfort in his back. He was also prescribed a TENS unit to stabilize his lower back at Sarah Bush Hospital back in 2002 and 2003. Let me ask you a question about some of the medical evidence just because not all of us have the record before us before this hearing. Two questions. One as to the 2001 radiology report from Sarah Bush Lincoln. 2001, also had a magnetic resonance imaging scan in August 2003, excuse me, which revealed a small to moderate central posterior disc protrusion or herniation at L3-4, L4-5, L5-S1 with mild bulging at L5-S1. Degenerative disc changes were present at L5-S1. Is that an inconsistent finding or is that actually what the radiology report or the MRI says? No, I don't believe it and I think, Your Honor, we're talking about before the first incident, am I correct? No, I don't believe that it is. I think that there was a long history of back problems both on the left and the right side for this individual, if I understand your question correctly. Oh, we've got mild bulging, okay, small to moderate protrusion or herniation. Okay. What about then one of the IMEs, Dr. Mercier? Yes. That's your IME? Yes. He opined that plaintiff's back surgeries, back pain and nerve impairment were not work related. Did he go on to say what was the cause? Yes, I think, I believe that he does in his report and his report is extremely detailed and provides the history, not only what he surmises but also what the history is in the record and those records from Sarah Bush and the MRIs, the records taken back at that time. He basically states that it was a 1994 car accident and even before that he had a history of back problems affecting this particular area of the body. So he's basically stating that there was nothing which caused a disability on these occurrences nor was there an aggravation of a pre-existing situation. Thank you. Any further questions, Your Honor, on that? No. So the question in this particular case simply manifests weight and as this court is well versed on the manifest weight standard, we can't sit here and re-weigh the evidence. I may not agree with what the board decided, the counsel may not agree, the court may not agree. However, the question is when we review that decision with the entire record, we have to determine is there competent evidence in the record to support the board's decision. The court can't merely re-weigh the evidence because somebody doesn't like that decision. It's our belief in this particular case that the circuit court did in fact re-weigh the evidence and one of the comments in the judge's decision in that particular case was that causation is strictly a medical question. Causation is not strictly medical. This is a question on causation, not on disability. And the cases cited, I believe, by the plaintiff in this case, and Wade is the one case that was cited, those cases dealt with disability. But causation is a fact issue for the board to determine. I believe the Marconi case talks about that and the board must review that and the court must review it based upon all the evidence in the record. And the items that I pointed out here, the fact that there were no reports filed on the date of the injury, in some instances there were no reports filed, there was no emergency medical treatment, he didn't see the doctor two weeks after the second injury. The fact that he expressed in his testimony and in his interrogatories that he never really experienced pain before is just unfounded because the record is very clear that prior to the incident in question, he did express pain and he did express to his doctor asking whether surgery was going to be a viable option to relieve his pain. That is not consistent with an individual who is not experiencing pain. Were there workers' compensation claims with all three injuries? I believe there were. And I believe that there was a comment, if counsel will correct me if I'm wrong, I believe there was a comment in his brief stating that compensation may have paid on some of these claims. It is our position very clearly that whether compensation paid on a claim or not is not an issue before the board. The board is to determine whether there is a disability, number one, and number two, whether they're of the disability resulting from the performance of an active duty. And there's no race, gender, kind of collateral estoppel that applies? Absolutely not. Counsel, it seems that Mr. Wessel is arguing in his brief that the Wade case somehow changes the manifest Wade standard. Can you respond to, for example, where he says plaintiff urges this court to follow the same rationale in the application of the manifest Wade standard set out by the Supreme Court of Illinois in Wade and I think it's Kazuka's office. Yes, we'll comment on that. And is that your causation versus disability issue? Yes and no. I don't believe that either Wade or the other case cited by the counsel in this particular case, I don't believe the court is into weighing how many medicals there are for disability, how many medicals there are against disability. The question is, is there competent evidence in the record to support that? And if there's one medical or one part of the record that clearly supports it, that's sufficient, that's competent. I believe in the Wade case and the other case, the court was critical of the medical decision saying that the medical decision had no foundation whatsoever in the balance of the record of the case. And so therefore, they believe the medical that was relied upon by the board was wholly incompetent because the record refuted that. In our case, Dr. Mercier's medical opinion is not refuted. It is supported by the record precisely as to the history that has been laid out in that particular case. And again, this is not a disability. So your view of Wade then is that the Supreme Court was simply saying the expert testimony there was not competent? Yes. Okay. So there was no other competent evidence to support the administrative decision? Yes, sir. But that would not guide us in this case because you're saying the expert relied upon was? Yes, I believe that the expert relied upon. But again, we're not dealing with an issue. The board agrees that this individual is disabled. Now, there's been a theory proposed, well, you accepted Dr. Mercier came back and said he's not disabled. But I think when you read the report, what Dr. Mercier is saying in his report is he's not disabled because of these particular injuries. I think both he and Dr. McGivney say that he's disabled and primarily the first surgery was not successful. And all the doctors are basically saying there was scar tissue and that scar tissue had to remove. And I think what should eventually evolved into the fusion on the third surgery. So the board isn't disagreeing that there's a disability. Very clearly, they are agreeing there's a disability. They're saying that the manner in which is plain that this happened or was aggravated is not the case in the Record Refuse Act. And the bad surgery that was performed was by McGivney? Uh, yes. And I refer to McGivney who is the IME by the board. I think McKenzie is the one that performed one of, I think probably two of the surgeries. Okay, just to summarize if the court has no further questions. Again, I believe that the circuit court in this matter took the liberty to reweigh the evidence, come to a different decision. I believe that the record clearly establishes in this case that there is competent evidence in the record to support the board's decision granting the non-duty disability and denying the line-of-duty disability. Anything further, Your Honors? No, thank you. Thank you very much. Mr. Wetzel? There certainly seems to be competent evidence to support the board's decision here. Excuse me? There certainly seems to be competent evidence to support the board's decision here. How do we ignore that? Well, I think if you look at the evidence itself, the evidence they relied on is the opinion of Dr. Mercier or Mercer or however you pronounce his name. His opinion states that in 2000, that the surgery in 2006 was not work-related and that in of itself that it wasn't work-related and that he wasn't disabled entirely in any manner. If you look at that opinion itself, he doesn't make mention about any of the 2004-2005 incidents. The defendant has clearly admitted that all three incidents are active duties. If you look at the records, the treating records in this case support the conclusion that the treatment he received on his back, which involved three surgical procedures, were related to those acts of duty. So if the 2004-2005 was an aggravating factor to the disability, then he's entitled to in the line of duty disability benefits. I think that's the only dispute. I agree with counsel. The only disputed issue is whether any one of these acts of duty that counsel's mentioned, the one that happened in August of 2004, the one that happened in May of 2005, and the final one in June of 2006, whether any of those were aggravating factors or the cause of his disability. Again, they point to Mercier's opinion. They point to the fact that he had pre-existing back problems. Well, in Wade versus the city of North Chicago, which counsel has admitted that a disability claim can be based upon an aggravation of a pre-existing condition. So the fact that he had prior back problems is not a controlling issue here. So the evidence that you look at in this case also is the evidence that's been presented that's in favor of the line of duty disability benefits. For instance, they had three IME reports that the board sent a claim to, two of which were in support of the line of duty disability benefits. The only one that was not in favor was Dr. Mercier. Dr. Mercier, again, only makes mention to the 2006 surgery. Doesn't make mention of 2004, 2005. And I would also point out in the Wade case, that the site is 226 Illinois 2nd, 507. And it says the defendant, in this case, they're referring to the board or the pension board, owes a fiduciary duty to its members. If that's the case, then granting disability to someone that's not entitled to disability benefits wouldn't be a breach of that fiduciary duty. So the only way that the Charleston Pension Board could uphold its fiduciary duty and find a plaintiff was disabled is if they found that Dr. Mercier's opinion that he was not, that plaintiff was not disabled was not credible. And if the defendant finds that part of that opinion is not credible, that does lead to the inference that his entire opinion is not credible. Because he's basing some of his further conclusions on the fact that he has found that the 2006 surgery was not worth belaying. And the fact that he was not disabled. He doesn't mention about the 2004 and 2005 aggravations or whether they were any causes. So I don't believe that there's even any evidence or competent evidence whatsoever to suggest the 2004-2005 surgery weren't aggravating factors. Council has admitted that this first surgery, which was a result of the 2004, August, excuse me, August 10, 2004 surgery, or incident, let me start over here. Council admits that the first surgery, which was a result of the August 10, 2004 surgery, was not successful. And that the subsequent surgeries, and I don't believe he has gone this far, I don't want to put words in his mouth, but the subsequent surgery was basically a result of that ineffective initial surgery. So if you look at it, it seems to me to suggest that the 2004 injury was at least an aggravating factor to his current disability. And if that's the case, then he's entitled to line-of-duty pension benefits. Now, I would like to address Justice Turner's question that he asked Council and Mr. Atwell when he talked about the weight, manifest weight standard. I'm agreeing that it's the manifest weight standard. I have a difficult time ascertaining what that is. Council, in his brief, and I'm not saying this is not true, but the Council in his brief says Olympic testified in review of the Administrative Board's decision under the manifest weight standard requires the Court to review the entire record to determine only if any competent evidence exists in support of the Board's decision. Assuming there is competent evidence in the record to support the Board's decision, application of standard mandates the Court affirm the same. He cites Robin versus Carbondale Police Pension Fund. It's a Supreme Court 1997 case. That case let me pull it here. That case further goes on, at least what it talks about, the application of the manifest weight standard. It's cited as Illinois, I mean, 177 Illinois 2nd at 538. It says an administrative agency decision is against the weight of the evidence only if the opposite inclusion is clearly evident. That same language appears in the weight decision. I'm not sitting here saying that this manifest weight standard is a small burden to overcome. I'm not asking this Court to weigh the evidence that the Supreme Court defended at the hearing. I understand that administrative decision gets considerable deference, but like the Supreme Court has said, that deference is not boundless and it's not insurmountable. It doesn't matter that the issue here is causation versus in weight it was disability? No, I don't believe so, Judge. I think that when they look at this, when they're, if you look at the weight decision, I don't think they make a determining factor of whether this is an issue of causation or an issue of whether the incidents happened or anything else. They're still applying the manifest weight standard. And again, I'm going to leave the application, I only bring this argument up and it's really just a point because I have difficulty ascertaining what the manifest weight standard is. But I leave the application at the sound discretion of the Court because I mean you, as the appellate Court you've applied the manifest weight standard far more times than I've even sat and considered it. So I leave that with you, but I bring that up because I can't rationalize the two differences in what the defendant is saying the manifest weight standard is from what the language of the Supreme Court is. Now they may be the same and the Court may determine that it's clearly evident if there's no confident evidence there. But is it possible that there could be confident evidence there but there is so much overwhelming confident evidence on the other side that it's clearly evident that a wrong decision was made. I don't know which way that ball bounces. With Justice Myerkoff, with your question about the 2003 MRI radiology reports, that did occur prior to the August 10, 2004 incident, there's no doubt. We have conceded that he has had prior back problems, but in Wade it says that the disability can be based upon prior pre-existing condition. If they look at Dr. McKechnie's, and I think it's I put in my brief, it was his September 16, 2004 medical record, he took that MRI, he took an MRI on August 18, 2004, and Dr. McKechnie compared that to that August 18, 2003 MRI report. He compared it and he said, when making a comparison, that there's substantially more dysmaterial now excluded behind the body of the L4, L5 level of his lumbar spine. So that means to suggest that there was an aggravation of something else that caused that. He relates that back to the injury. So does Dr. Roos, who didn't see the plaintiff. Dr. Roos actually was Charleston Police Force Workers' Compensation IME doctor, and they sent him to Dr. Roos to form an opinion as to whether this was work-related. I won't read his letters that he wrote to the Workers' Compensation, but the first one he said, yes, it's work-related. The second one, which counsel says he does not either considering is not work-related, Dr. Roos wrote an opinion after he did a diagnosis of the plaintiff, and he wrote an opinion to the Workers' Compensation carrier saying that it is work-related. He says, I think his recurrent disc herniation is related to his accident of May 3rd of 05 while wrestling a large suicidal male, as this is a very good mechanism of injury for causing his recurrent disc herniation. This is somebody that's treating him and saying that this is a work-related injury, and that the injuries that he's treating him for, that he subsequently performed surgery on, was related to this May 3rd, 2005 incident that the defendant has already conceded was an active duty under the pension code. The two other doctors, that after he applied for benefits, the plaintiff applied for benefits in January of 2007, I think it was January 16th, 2007. They sent him to three IME doctors, Dr. Mercier, Dr. Gibney, and Dr. Gleason, I believe, two of which, Gleason and McGibney, says that support the position that this is a line of duty disability benefit. The only one that doesn't is Dr. Mercier, and I think putting that much weight in Dr. Mercier's opinion and looking at his opinion, either in defendant's terminology, is not confident evidence based upon the opinion after reviewing all his previous medical cases. I think I've addressed at least the arguments I wanted to bring up with regards to counsel's arguments. Does the court have any further questions about my brief or anything else? No, thank you. Okay, well, in summary, I would say that the defendant suffered three active duty incidents, August 10th, vote 4, May 3rd, vote 5, and June 20th, vote 6. He received treatment for these injuries. He had three surgical procedures for these injuries, all in the same area that the defendant now agrees that he is disabled from. We only have to prove it's an aggravating factor. Any one of these three is an aggravating factor. I think it's clearly evident that the evidence in the record supports that. And we would ask the court, I would on behalf of my client, would ask the court to affirm the circuit court's decision in this case. Thank you. Thank you, counsel. Mr. Atwell, Rebuttal. Is this judge Richard Skagg, who was retired, in recall? I'm sorry? He was retired and he's been recalled? I have a question. Is counsel accurate when he says Dr. Mercier says nothing about the 2004-2005 incidents? No, I think he points out that those incidents, but he basically states that all the incidents neither caused nor contributed to the stated disability in question. I thought you conceded that all three incidents occurred and that the 2004 incident occurred and the surgery was a result of that 2004 injury. The board is taking the position that that surgery is not the result of any of those incidents, including the first one. The 2004? Yes, ma'am. What the board is saying is that the subsequent surgery to a great extent was just a culmination of the history, the pre-existing condition, and also the fact that I think several of the physicians, including Mercier and McGivney in their reports, both state that the result of the first surgery was not a successful surgery and basically the successive surgeries were necessary to relieve the scar tissue and that that was the primary reason. So I think that there is some question on that first surgery that was performed in that particular case. So your response to Justice Myerscough then is that counsel, when he says that Dr. Mercier's opinion pertains only to the 2006 incident and surgery, is incorrect. Yes, I think all the matters are addressed and I think that the opinion as far as the history provided is pretty clear. Now does it matter in terms of manifest weight of the evidence that these three IMEs, two, all three are performed for the city and two of them say he's disabled? Well, again, there's no question of the disability. The only question is is how did the disability, how did it, but does it make any difference of the others? No, I think it gets back to the issue of manifest weight and when we're dealing with causation, we're looking at the whole record here, both as Marconi case says, both the medical and the non-medical record in this particular case. So was Mercier the last IME? You know, I can't answer that. And my question being... He might be the second. I'm not quite sure.  have the right to have an examination? I've never seen... We have, but here's what you say. In addition to the IMEs under the workers' compensation. What happens in this particular case is the statute requires that no disability may be paid without the certification of three physicians for an examination. Now, it used to be some argument that did all three physicians have to concede the disability or the... And courts have determined, no, but the statute provides you must have three independent medical examinations selected by the board. And what the board tries to do in most cases is to select, to do a new selection and not one of necessarily that have performed them for workers' comp or for somebody else necessarily. So, yes, in all cases the boards have to select three independent medical examinations. And then on an annual basis before the individual reaches 50, every year there must be a medical examination for the continuation of disability. So that's required. So, just in summation, I'd point out one more thing, too, that maybe I didn't in my original... On January 24, 2002, pursuant to Dr. Wuchner's referral, the applicant was examined at Sarah Bush Lincoln Health Center. This was before the first incident. He, at that time, he provided a history to the physical therapist, Stacy Wuchner. And I'm citing on page 5 of my brief in response, stating that his pain in his back at the worst was 9 out of 10. Continuing, she states that before medication, there were times he was unable to get out of bed or get up from the sitting in a chair. He states that after sitting prolonged, coughing or driving for his job, it really increases his pain. Now, the only reason I mention these things is this is not indicative of an individual who prior to the first incident wasn't experiencing pain. He testified that he necessarily wasn't, but the record refutes that testimony. He was clearly experiencing pain prior to that time. We believe the court reweighed this and we believe that the decision of the board should be sustained. Thank you, counsel. We'll take this matter under advisement and...